**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HOWARD MALONE and** | § | |
| **SUSAN MALONE,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-CV-2047-BH** |
| | § | |
| **LEO SPENCE, JASON BULLARD, and** | § | |
| **CRST EXPEDITED, INC.,** | § | |
| **Defendants.** | § | **Consent Case[1]** |

## MEMORANDUM OPINION AND ORDER

Based on the relevant filings, evidence, and applicable law, *Defendant Leo Spence and CRST Expedited, Inc.'s Motion for Partial Summary Judgment*, filed February 17, 2023 (doc. 98), is **DENIED**; the *Motion for Summary Judgment on Plaintiffs' Negligence and Gross Negligence Claims against Defendant Jason Bullard,* filed February 17, 2023 (doc. 101), is **GRANTED**; and *Plaintiffs' Motion for Leave to File Surreply Brief*, filed April 18, 2023 (doc. 132), is **DENIED as moot.**

## I.  BACKGROUND

At approximately 3:30 a.m. on April 17, 2020, a tractor-trailer driven by Leo Spence (Driver), who worked for CRST Expedited, Inc. (Company), ran off a highway and struck multiple vehicles parked in a convenience store parking lot. (docs. 46 at 1; 120-20 at 8; 120-43; 120-44.)[2] Sleeping in two of those vehicles were Howard and Susan Malone (Plaintiffs), who sustained major injuries as a result. (doc. 120-63.) Driver told responding paramedics and a police officer that he had

---

[1]By consent of the parties and order filed October 21, 2021 (doc. 14), this matter has been transferred for the conduct of all further proceedings and the entry of judgment.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

fallen asleep at the wheel. (docs. 120-11; 120-47.)

Company is a commercial motor carrier subject to the Federal Motor Carrier Safety Regulations (FMCSR).[3] (doc. 120-20 at 31.)  It uses a two-person driver system for long-distance deliveries; one person drives while the other one rests in the truck's sleeper berth. (doc. 120-22 at 3-4.) It does not have a formal fatigue policy, but drivers receive training on fatigued driving as part of the on-boarding process and are specifically instructed that the Hours of Service requirement is designed to address driver fatigue. (docs. 120-14 at 27-29; 120-51; 120-57.) They are also instructed to include sleeper berth time in their driver logs. (doc. 120-14 at 27-29.) Company does not have a system to monitor driver logs and flag when a driver's sleeper berth time is not accurately reported. (docs. 120-12; 120-15.)

On September 30, 2019, Company hired Driver as an over-the-road truck driver. (doc. 120-29.) At the time, he had no professional experience driving a tractor-trailer, but he was trained to drive an 18-wheeler and had a commercial driver's license (CDL). (doc. 120-16 at 3.) His job application showed that he had worked as a limousine driver for approximately four years, and that he was briefly hired for a truck driving job at Swift Transportation in July 2014, but was terminated the same month for falsifying his job application. (docs. 100 at 6-7; 120-24.) A criminal background investigation performed by Company showed a prior felony conviction. (doc. 120-4.) Company's

---

[3]The FMCSR imposes certain duties and obligations on commercial drivers and motor carriers, and governs, among other things, driver qualifications, motor carrier training and oversight, and prevention of fatigue. *See* 49 C.F.R. §§ 380.101-.725, 390.1-.403, 391.1-.73, 392.1-.82, 395.1-.38.  It provides, in part, that "[n]o driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle." *Id.* § 392.3. Motor carriers are required to monitor its driver's Hours of Service, which is the maximum number of hours a driver may operate without rest. *Id.* § 395.3; 395.8. To ensure compliance, a motor carrier must require its drivers to record his duty status on the truck's electronic logging device in four categories: "Off duty," "Sleeper berth," "Driving," or "On-duty not driving." *Id.* § 395.8.

decision to hire Driver was based, in part, on his clean driving record and safe driving behaviors. (doc. 100 at 24-25.)

Prior to his hiring, Driver signed an agreement stating that he had received and would adhere to Company's policy pertaining to moving violations. (doc. 120-58 at 2.) It provides that he may be subject to discipline or termination for, among other things, operating a commercial motor vehicle (CMV) "while ill, fatigued, or driving after being declared Out-of Service under the Hours of Service regulations." (*Id.*)

After he was hired, Driver received driver safety training at Company's Iowa facility. (doc. 103 at 12.) From October 17 to November 1, 2019, a supervising trainer was assigned as his co-driver. (doc. 120-21 at 4.) During that period, Driver's logs properly reported the amount of time he spent in the sleeper berth. (*Id.*; doc. 120-69 at 8-27.) Beginning on November 21, 2019, Driver stopped reporting his sleeper berth time in his logs. (docs. 120-21 at 4; 120-69 at 51-118.)

While driving for Company, Driver had two preventable accidents on November 25, 2019 and January 25, 2020; he received a traffic citation on January 28, 2020. (docs. 120-34; 120-35.) On February 3, 2020, Company required Driver to attend a safety review because of those accidents. (doc. 120-48.)

While out on a delivery for Company on February 10, 2020, Driver emailed Company that "he got off the truck to go home" and was "done with the company." (doc. 120-36.) On February 14, 2020, Company reached out to Driver and was told that "things got difficult between him and his wife with him being on the road all the time and away from her," and that "they decided it would be better going another route with something more local." (*Id.*)

On February 17, 2020, Driver was hired by another trucking company but was terminated

3

two days later on February 19, 2020, because it found him "to be unqualified as a driver." (doc. 120-37.) On February 21, 2020, Company offered Driver incentive pay to return to work; he accepted and returned to work the same day. (doc. 120-38.)

From March 17 to April 17, 2020, Alcion DeSouza (Co-driver) was assigned to drive with Driver. (doc. 120-69 at 74-118.) On April 16, 2020, while Driver was in the sleeper berth, Co-driver drove to Company's terminal in Dallas, Texas, to pick up a load for delivery in Colorado. (docs. 100 at 14; 17-18.) Driver and Co-driver left the terminal at approximately 10:00 p.m., with Driver driving and Co-driver in the sleeper berth. (*Id.*) Jason Bullard, Company's safety trainer who worked at the Dallas terminal (Safety Trainer), did not see or visit with Driver when he was at the terminal. (doc. 103 at 9-10, 12.)

Driver and Co-driver later stopped at a truck stop at approximately 11:30 p.m. to shower and eat. (doc. 100 at 18.) Co-driver was exhausted and suggested that they stay to get some sleep and leave at dawn, but Driver responded that he was doing "very well", and that they would not be able to sleep well even if they did stay because they would be receiving messages from Company about stopping. (*Id.* at 18-19.) At approximately midnight on April 17, 2020, Driver drove out of the truck stop and continued driving on the highway, and Co-driver went to the sleeper berth to rest. (*Id.*)

Three and half hours later, at approximately 3:30 a.m., the tractor-trailer ran off the highway at a speed of over 60 mph, crossed over a ditch and road, and continued into a convenience store parking lot, where it struck multiple parked vehicles. (docs. 120-20 at 8; 120-43; 120-44.) Plaintiffs were sleeping in two of the vehicles and sustained; major injuries from the collision. (doc. 120-63.) Driver told responding paramedics and a police officer that he had fallen asleep at the wheel before the crash. (docs. 120-11; 120-47.)

4

Plaintiffs sued Company, Driver, and Safety Trainer (Defendants) in state court for negligence, negligence *per se*, and gross negligence. (*See* doc. 1 at 23-25, 38-39.) After the case was removed to federal court, Plaintiffs filed an amended complaint alleging that Driver failed to maintain proper control of the truck to avoid the collision and operated a CMV while unqualified, fatigued, and in violation of local, state, and federal law. (doc. 46 at 5-6.) They also claimed that Company and Safety Trainer failed to implement and enforce a fatigue policy; hired and allowed an unfit and/or fatigued driver to operate a tractor-trailer; failed to train and supervise Driver; failed to monitor and/or ensure Driver's driver logs were compliant; and allowed and/or encouraged Driver to operate a CMV in violation of local, state, and federal law. (*Id*. at 6-9.) They also allege that Driver's "lack of qualifications, unsafe and inattentive track record, non-compliant driving logs, fatigue and personal struggles and/or stress directly led to the crash that caused" their severe injuries, and that they are entitled to recover exemplary damages because Defendants' negligent acts and omissions "constitute an entire want to care as to indicate that such acts and omissions were the result of conscious indifference to the rights, safety, and welfare of others." (*Id.* at 9-10.)

On February 17, 2023, Defendants moved for summary judgment on all claims against Safety Trainer, and for partial summary judgment on the gross negligence claims against Driver and Company and the negligence claims against Company. (docs. 98; 101.) Plaintiffs responded on March 24, 2023 (docs. 119; 120), and Defendants replied on April 6, 2023 (doc. 128.)

## II.  EVIDENTIARY OBJECTIONS

Driver and Company object to Plaintiffs' expert reports because they did not include an affidavit or declaration from their experts. (doc. 128 at 6-8.)

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c).

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This includes expert testimony that meets the admissibility requirements of Federal Rules of Evidence 702. *See* Fed. R. Evid. 702. "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis original). While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017).

Here, Driver and Company generally object to Plaintiffs' expert reports as inadmissible summary judgment evidence on the ground that they are unsworn. (doc. 128 at 8.) As discussed, courts "may consider evidence at the summary judgment stage if that evidence contains facts which would be admissible at trial, even if that evidence is unsworn or in a presently inadmissible form." *Blueitt v. Crestbrook Ins. Co.*, --- F. Supp.3d ----, No. 4:22-CV-00466-O, 2022 WL 18034196, at *1 (N.D. Tex. Nov. 30, 2022). The Fifth Circuit has found that a court abuses its discretion and commits an error of law when it declines to consider expert reports in support of a summary judgment motion "solely because they were unsworn, without considering whether those opinions were capable of being presented in a form that would be admissible in evidence." *Patel v. Texas Tech University*, 941 F.3d 743, 746-47 (5th Cir. 2019) (citations and internal quotations omitted). Driver's and Company's objection on this basis is **OVERRULED**. *See id.*; *see, e.g., Dilick v. Price Pfister, Inc.*, No. 3:18-CV-00400, 2020 WL 4677688, at *3 (S.D. Tex. June 8, 2020) (holding that plaintiff's unsworn expert reports were "proper summary-judgment evidence" as no other arguments were made by defendants that would render the information in the reports inadmissible at trial);

*Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 4644459, at *6 (E.D. Tex. Mar. 19, 2020), *adopted by* 2020 WL 2610908 (E.D. Tex. May 22, 2020) (denying motion to exclude unsworn expert report at summary judgment stage as movant failed to make any arguments concerning the inadmissibility of its contents).[4]

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues.  *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on an issue, it must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis original). The moving party can also meet its summary judgment burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

---

[4] Plaintiffs' motion for leave to file a surreply brief to address Defendants' objections to their summary judgement exhibits is **DENIED as moot**. (*See* doc. 132.)

Once the movant meets its summary judgment burden, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[5] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to its case and as to which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### IV.  SAFETY TRAINER'S SUMMARY JUDGMENT MOTION

Safety Trainer moves for summary judgment on all claims against him, arguing he is a corporate agent of Company and owes no independent duty to Plaintiffs. (doc. 102 at 9.)

---

[5]"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing FED. R. CIV. P. 56(c)(1)).

Under Texas law,[6] a corporate employee acting within the course and scope of his employment can only be personally liable for negligence if he "owes the plaintiff an independent duty of care apart from the duty owed by the employer." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) ("[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty."). "Nevertheless, an individual employee may be held personally liable for a plaintiff's injuries if the employee acted outside the scope of his or her employment or played a 'personal role in creating the dangerous condition at issue.'" *Angeles v. Target Corp.*, No. EP-15-CV-193-KC, 2015 WL 12659926, at *1-2 (W.D. Tex. Aug. 7, 2015) (quoting *Lyle v. 24 Hour Fitness, USA, Inc.*, No. A-14-CA-300 LY, 2014 WL 5094126, at *4 (W.D. Tex. Oct. 10, 2014)).

Safety Trainer argues that Plaintiffs' negligence and gross negligence claims against him fail as a matter of law because there is no evidence that he owed them an independent duty apart from what Company owes them, or that he had any personal involvement in the conduct that caused their injuries. (doc. 102 at 10-11.)  By pointing out the need for, and lack of, evidence of his duty to Plaintiffs and personal involvement, Safety Trainer has met his summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiffs to identify evidence in the record creating a genuine issue of material fact regarding whether Safety Trainer is entitled to summary judgment on their claims

---

[6]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the accident occurred in Texas. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."). Further, the parties agree that Texas law governs this lawsuit. *See, e.g., R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145, 148-49 (5th Cir. 2013) ("All parties agree that Texas law governs this dispute, and because federal jurisdiction is based on diversity, we apply Texas's substantive law.").

against him. Plaintiffs concede that they do not have adequate evidence to prove their claims against Safety Trainer individually and do not oppose his motion for summary judgment. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (explaining that a court may accept as undisputed the facts listed in support of an unopposed motion for summary judgment). Because Safety Trainer has met his summary judgment burden to show a failure of proof regarding the existence of an independent duty owed by him, and as to the absence of his liability for negligence and gross negligence, he is entitled to summary judgment dismissing all claims against him. *See Leitch*, 935 S.W.2d at 117; *see, e.g., Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2023 WL 2632803, at *10 (E.D. Tex. Mar. 25, 2023) ("Absent a genuine issue of material fact that Patterson had a duty to Roe independent of SWBTS's duty to Roe, her negligence claim against him must fail."); *Benedetti v. Wal-Mart Stores Texas, LLC*, No. 5:16-CV-604-DAE, 2018 WL 2996900, at *6 (W.D. Tex. Apr. 12, 2018), *aff'd sub nom. Benedetti v. Wal-Mart Stores Texas, L.L.C.*, 788 F. App'x 945 (5th Cir. 2019) ("Plaintiff has not alleged—much less provided summary judgment evidence—that Doe owed her an independent duty of care apart from the duty Wal–Mart owed her as an invitee. Without more, Plaintiff's claims against Doe cannot survive summary judgment.").

Safety Trainer's motion for summary judgment is granted, and all claims against him are dismissed with prejudice.[7]

## V.  DRIVER AND COMPANY'S PARTIAL SUMMARY JUDGMENT MOTION

Driver and Company move for summary judgment on all gross negligence claims against them, and on the direct negligence claims against Company. (doc. 99 at 9, 16.)

---

[7]Because Safety Trainer is entitled to summary judgment on all claims against him, it is not necessary to consider the additional arguments raised in his motion.

A.      **Gross Negligence Claims**

In Texas, "gross negligence is not a separate cause of action apart from negligence." *RLI Ins. Co. v. Union Pac. R. Co.*, 463 F. Supp.2d 646, 649-50 (S.D. Tex. 2006) (citing *Prati v. New Prime, Inc.*, 949 S.W.2d 552, 557 (Tex. App.–Amarillo 1997, writ denied)).[8] "Rather, the degree of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages." *Id.* (citation omitted).  In order to prevail on a gross negligence claim, a plaintiff must prove that "1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 41.001(11)). "Both elements of gross negligence must be proven by clear and convincing evidence and may be proven by circumstantial evidence." *Rayner v. Dillon*, 501 S.W.3d 143, 148 (Tex. App.—Texarkana 2016, writ dism'd) (citations omitted).

"Under the first, objective element, an extreme risk is 'not a remote possibility of injury or even a high probability of harm, but rather the likelihood of serious injury to the plaintiff.'" *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). To establish the subjective element, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Medina*

---

[8]The elements of a negligence claim in Texas are: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). "If a plaintiff fails to make out a claim for ordinary negligence, then the plaintiff has necessarily failed to make out a claim for gross negligence." *Connell W. Trucking Co. v. Estes Express Lines*, No. EP-20-CV-312-KC, 2022 WL 5568428, at *3 (W.D. Tex. June 28, 2022) (citation omitted).

*v. Zuniga*, 593 S.W.3d 238, 248 (Tex. 2019) (citation omitted). "Awareness of an extreme risk does not require proof that the defendant anticipated the precise manner in which the injury would occur or be able to identify to whom the injury would befall." *Telesis/Parkwood Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 245 (Tex. App.—El Paso 2015, no pet.) (citing *U-Haul*, 380 S.W.3d at 139). "Evidence of simple negligence does not meet either the subjective or objective elements." *Ellender*, 968 S.W.2d at 921.

### 1. Pleading Deficiencies

Driver and Company argue that they are entitled to summary judgment on Plaintiffs' gross negligence claims because they are not sufficiently pleaded. (doc. 99 at 9.)

"[W]hile failure to state a claim usually warrants dismissal under Rule 12(b)(6), it may also serve as a basis for summary judgment.'" *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 17 (5th Cir. 2009) (quoting *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992) (quotation omitted)). "A motion for summary judgment challenging the sufficiency of a plaintiff's pleadings will be 'evaluated much the same as a 12(b)(6) motion to dismiss.' " *Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 F. App'x 710, 713 (5th Cir. 2008) (quoting *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993)). "[B]oth standards reduce to the same question, specifically, if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim." *Taplin v. Wells Fargo Bank, N.A.*, No. 3:17-CV-3404-M-BN, 2018 WL 6933153, at *6 (N.D. Tex. Nov. 28, 2018), *adopted by* 2019 WL 112103 (N.D. Tex. Jan. 4, 2019) (citation and quotation omitted). "In evaluating a motion for summary judgment in this way, the Court assumes that all of the plaintiff's factual allegations are true and supported by competent summary judgment evidence, and then determines whether genuine issues of material fact exist as to any of the elements of the plaintiff's claim." *Narvaez v. Wilshire*

*Credit Corp.*, 757 F. Supp.2d 621, 631 (N.D. Tex. 2010) (citing *Ashe*, 992 F.2d at 544).

Here, the amended complaint alleges that the negligent acts and omissions of Driver and Company "constitute an entire want to care as to indicate that such acts and omissions were the result of conscious indifference to the rights, safety, and welfare of others, including Plaintiffs." (doc. 46 at 9-10.) It alleges that Driver chose to drive and was allowed to drive for Company on April 17, 2020, despite their "knowledge of [Driver's] lack of qualifications as a driver; their knowledge of his personal struggles; their knowledge that he was fatigued; their knowledge he was at risk for fatigue; their knowledge he was non-complaint with his driving logs; and their knowledge that he was unsafe and inattentive." (*Id.* at 10.) These allegations are sufficient to state a plausible claim of gross negligence against Driver and Company. *See U-Haul*, 380 S.W.3d at 137; *see, e.g., Hernandez v. Wood/Chuck Chipper Corp.*, No. 4:1l-CV-597, 2012 WL 1836352, at *4 (E.D. Tex. Apr.13, 2012) (finding that plaintiff stated a claim for gross negligence where plaintiff "pleaded that the Defendants acted with conscious indifference to the rights, safety, or welfare of others when they manufactured and sold a wood chipper with an extreme degree of risk to the employer of Plaintiff").

Driver and Company's motion for summary judgment on the gross negligence claims on pleading deficiency grounds is denied.

### 2. Driver

Driver and Company argue there is no evidence to support either element of Plaintiffs' gross negligence claims against Driver. (doc. 99 at 11.)

"Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp.3d

640, 656 (S.D. Tex. 2016) (citing cases). To constitute gross negligence, "a driver's actions must be considerably more extreme, often involving multiple conscious acts or omissions." *Id.* "Driving while fatigued is a major cause of traffic accidents and may lead to finding of gross negligence." *Gaines v. Shelvin*, No. 9:08-CV-40, 2009 WL 10677820, at *3 (E.D. Tex. Apr. 9, 2009); *see, e.g., Rayner*, 501 S.W.3d at 152-53 (upholding a jury verdict finding gross negligence where there was evidence that a tractor-trailer driver was fatigued when he collided with plaintiff's vehicle); *USA Truck, Inc. v. West*, 189 S.W.3d 904, 906 (Tex. App.—Texarkana 2006, pet. denied) (explaining that truck driver's decision to drive while fatigued and evidence that he drove longer than allowed under federal regulations were factors properly considered in assessing whether his actions involved an extreme degree of risk). "Failing to keep accurate log books is also evidence of gross negligence." *Ruiz v. Minh Trucking, LLC*, No. 5:19-CV-1191-DAE, 2020 WL 8361992, at *4 (W.D. Tex. Dec. 3, 2020) (citation omitted); *see also Rayner*, 501 S.W.3d at 159-60 ("The Department of Transportation (DOT) adopted the log book and driving limit regulations precisely because of the inherent difficulty in establishing driver fatigue as weighed against the potential danger to the public by fatigued drivers. The clear purpose behind these regulations is to ensure that tractor-trailer drivers are not placing the public at risk of death or serious injury on the nation's highways by driving while fatigued.") (Burgess, J. concurring).

Driver and Company contend that there is no evidence that Driver engaged in activities that involved an extreme degree of risk, and at most his actions constitute ordinary negligence. (doc. 99 at 11.) They also contend that even if his conduct amounted to extreme risk, there is no evidence that he knew of and was consciously indifferent of such risk. (*Id.* at 12.) They point to Driver's and Co-driver's testimony that Co-driver drove while Driver was in the sleeper berth the day before the

14

accident, they stopped at a truck stop to shower and eat, and Driver reported feeling fine three hours before the accident. (doc. 100 at 10-12, 19-20.) These defendants also point to Driver's testimony that his training taught him to pull over and get adequate rest if he felt fatigued, but he did not feel tired at any point prior to the accident. (*Id.* at 13-14.) In pointing out the need for, and lack of evidence of both elements of gross negligence, they have met their summary judgment burden. *See Celotex*, 477 U.S. at 325. The burden shifts to Plaintiffs to identify a genuine issue of material fact.

Plaintiffs point to camera footage from the tractor-trailer, which shows it was traveling over 60 mph on a highway with a posted speed limit of 45 mph when it veered from the lane, crossed over a ditch and road, and drove into a convenience store parking lot before crashing into their parked vehicles. (*See* doc. 120-44.) They also provide the responding paramedic's EMS report and excerpts from the investigating police officer's deposition testimony to show that Driver had reported falling asleep immediately before the accident. (docs. 120-11 at 4; 120-47 at 2.) They present Co-driver's testimony that he had suggested they stay at the truck stop to get some sleep but Driver decided to keep driving, that Driver was always working and complained to him about having to drive 24 hours a day without stopping for rest and having difficulty sleeping in the sleeper berth, and that he and Driver had complained to Company about not being able to sleep in the sleeper berth. (doc. 120-6.) Plaintiffs also provide Driver's logs, which show no sleeper berth time reported in the days before the accident. (doc. 120-69.) They point to the testimony of Company's representative, stating that its drivers are trained to accurately log their hours, including their sleeper berth time, but Driver did not report sleeper berth time in his driver logs. (doc. 120-14 at 9-14.) They also present a slide from Company's driver training materials explaining that the Hours of Service requirement is designed to address driver fatigue. (doc. 120-57.)

Viewing this evidence in the light most favorable to Plaintiffs, there are genuine disputes of material fact with respect to the gross negligence claim against Driver. As discussed, "[d]riving a large truck while fatigued may constitute gross negligence in some circumstances." *Marr v. Croxton*, No. SA-21-CV-00961-XR, 2022 WL 2346622, at *2 (W.D. Tex. June 29, 2022). Plaintiffs have presented sufficient evidence to support a finding that Driver's operation of a fully-loaded tractor-trailer on a highway at high speeds late at night while fatigued involved an extreme amount of risk. *See Greene v. W&W Energy Servs., Inc.*, No. 4:19-CV-4343, 2021 WL 5155675, at * 3 n.2 (S.D. Tex. Feb. 5, 2021) (explaining that plaintiff's evidence indicating that driver was fatigued while driving before the accident presented "a fact issue as to whether driving a large truck while fatigued creates an extreme degree of risk of which [defendant driver] was subjectively aware"). There is evidence that Driver told paramedics and police that he fell asleep at the wheel before the accident. Additionally, evidence that Driver did not report any sleeper berth time in his driver logs suggests that he was sleep-deprived and fatigued when he was driving on the day of the accident. See *Ruiz*, 2020 WL 8361992, at *4 ("[The driver] also failed to keep accurate driving logs, which is evidence of gross negligence under Texas law."). Further, Co-driver had testified that it was difficult to sleep in the sleeper berth, and that Driver also complained about not being able to sleep in the sleeper berth. While Driver and Co-driver testified that Driver reported feeling fine when they left the truck stop, and that Driver was in the sleeper berth the day before the accident, there is no testimony or other evidence about how much time, if any, he slept while in the sleeper berth. Plaintiffs have sustained their burden to identify a genuine dispute of material fact as to the objective element.

There is also sufficient evidence to support a finding that Driver was subjectively aware, yet disregarded, the extreme risk of fatigued driving. Driver testified that he had been trained to pull

16

over if he felt tired to get adequate sleep, and there is evidence that he received Company's training materials regarding the potential adverse effects of driving while fatigued. (docs. 100 at 13-14; 120-57.) This evidence, combined with Co-driver's testimony that Driver rejected his suggestion to stay at the truck stop to sleep, could lead a reasonable jury to conclude that Driver was subjectively aware of the risks involved in fatigued driving but was consciously indifferent. *See Gaines*, 2009 WL 10677820, at *3 ("Taken together, Gaines's allegations that Shelvin was tired and fell asleep, knowing that if he fell asleep it could lead to disaster as he was driving hazardous material, and lack of driving logs provides sufficient evidence of a material fact issue to preclude summary judgment."); *see also Perez Librado v. M.S. Carriers, Inc.*, No. CIV.A.3:02-CV-2095-D, 2004 WL 1490304, at *3 (N.D. Tex. June 30, 2004) ("If the jury found that an experienced truck driver who was generally aware of his rate of speed, the weight of his vehicle and load, the stopping distance required at that speed, and the damage his large tractor-trailer would inflict on a much smaller vehicle and its occupants, had intentionally chosen for a period of 14 to 20 seconds to read a map rather than monitor the roadway, it could also find circumstantially that he had actual, subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others."). Plaintiffs have offered sufficient evidence for a jury to find that Driver decided to drive while fatigued, and that this decision, viewed objectively from his standpoint, involved an extreme degree of risk, and that he was subjectively aware of the risks involved but was consciously indifferent.

Because there are genuine disputes of material fact with respect to the gross negligence claim against Driver, the motion for summary judgment is denied as to this claim.

17

### 3.      Company

Under Texas law, "[a] corporation may not be held liable for punitive damages for gross negligence unless the corporation itself (1) commits gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal." *Phillips*, 189 F. Supp.3d at 656-57 (citing *R & R Contractors v. Torres*, 88 S.W.3d 685, 708 (Tex.App.—Corpus Christi 2002, no pet.); *Ellender*, 968 S.W.2d at 921-22). "Whether the corporation's acts can be attributed to the corporation itself, and thereby constitute corporate gross negligence, is determined by reasonable inferences the factfinder can draw from what the corporation did or failed to do and the facts existing at relevant times that contributed to a plaintiff's alleged damages." *Ellender*, 968 S.W.2d at 922. "If the totality of the evidence is sufficient to lead to the inference that agents of the corporation were aware of the risk to which others were being exposed, such an inference is sufficient to support corporate liability." *Telesis/Parkwood*, 462 S.W.3d at 250.

Driver and Company generally argue that Plaintiffs' gross negligence claim against Company fails as a matter of law because they have not alleged "any component of corporate gross negligence established by the Supreme Court of Texas." (doc. 99 at 14.) The amended complaint alleges that Company was negligent, negligent *per se*, and grossly negligent for hiring and retaining Driver, a known unqualified driver; failing to properly train and supervise him; dispatching him when it knew he was fatigued and unfit to safely operate a tractor-trailer; failing to implement and enforce a fatigue policy; encouraging or allowing him to violate local, state, and federal law; and failing to monitor or ensure that his driving logs complied with federal regulations. (doc. 46 at 7-10.) As discussed, "[a]n employer may be grossly liable in hiring an employee if the employee was unfit

and the employer was reckless in hiring him." *Gaines*, 2009 WL 10677820, at *2 (citing *McDorman v. Texas-Cola Leasing Co.*, 288 F. Supp.2d 796, 809 (N.D. Tex. 2003)). Although the amended complaint does not expressly identify Plaintiffs' theory of corporate liability for their remaining allegations, courts have found that similar allegations are a claim of the corporation itself committing gross negligence. *See Lara v. Power of Grace Trucking, LLC*, No. PE:20-CV-00010-DC-DF, 2021 WL 7184245, at *7 (W.D. Tex. Oct. 4, 2021), *adopted by* 2022 WL 576581 (W.D. Tex. Jan. 4, 2022) (quoting *Machado v. Dyer*, No. SA-20-CV-00193-FB, 2021 WL 1840916, at *5 (W.D. Tex. May 7, 2021) ("Like many a claimant throughout the Western District of Texas, 'Plaintiffs' theory of corporate liability is unclear, but Plaintiffs' claim best fits into the first category: that [employer] itself committed gross negligence.'"); *Phillips*, 189 F. Supp.3d at 656-57; *see also Lyle*, 2016 WL 3200303, at *4 ("Claims against an employer for negligently hiring, supervising, training, or retaining an employee are based on *direct* liability, not on vicarious liability.") (emphasis added).

Company contends that the decision to hire Driver did not involve an extreme degree of risk because he had a valid CDL, a clean driving record, and was not an incompetent or reckless driver. (doc. 99 at 15.) It also contends that it did not recognize and consciously disregard an extreme degree of risk because it believed that Driver was a qualified driver and did not have any knowledge of his actions at the time of the crash. (*Id.* at 15-16.) While it presents some evidence suggesting that Driver was qualified when it *initially* hired him, the motion does not address Plaintiffs' allegations that Company was grossly negligent when it hired Driver for the second time in February 2020, when he was "a known unqualified driver." (*See* doc. 46 at 9.) Company also fails to address Plaintiffs' other allegations of its gross negligence, including its retention, supervision, and training

19

of Driver, its entrustment of the tractor-trailer, or its failure to implement a fatigue policy or to monitor driver logs. (*Id.* at 7-10.)[9]

Even assuming that Driver and Company satisfied their initial summary judgment burden, Plaintiffs have provided sufficient evidence to raise genuine issues of material fact on their gross negligence claims against Company. They provide evidence that when Company initially hired Driver in 2019, it knew he had been previously terminated by a trucking company in 2014 for a falsified job application, did not have any professional truck-driving experience, and had a felony conviction; when Company rehired him in February 2020, it knew he had been involved in two preventable accidents and received a traffic citation while operating its tractor-trailers and had walked away from his job because long-distance driving caused personal stress. (*See* docs. 120-16 at 3; 120-34–120-36; 120-48.)  They also present evidence that prior to his rehire by Company, another trucking company considered Driver an unqualified driver and terminated him after employing him for two days. (doc. 120-37.)

Plaintiffs have introduced evidence that Driver failed to properly record sleeper berth time in his driving logs, that Company trained its drivers on how the Hours of Service requirement addressed driver fatigue, and that it did not have a formal fatigue policy or a procedure to monitor driver logs and check if drivers were reporting sleeper berth time. (*See* docs. 120-12; 120-14 at 27-29; 120-15; 120-21 at 4; 120-51; 120-57; 120-69.) They also provide Co-driver's testimony that Company pressured its drivers to drive non-stop for 24 hours a day without rest, that it was impossible to sleep while riding in the sleeper berth, and that he and Driver had complained to Company about not getting sleep in the sleeper berth. (*See* doc. 120-6.) Based on the summary

---

[9]In fact, Driver and Company contend in their reply brief that Plaintiffs' only "theory" of gross negligence against Company is for hiring an unfit agent. (doc. 128 at 13.)

20

judgment evidence, a reasonable jury could find that Company's conduct created an extreme risk of harm and that it had subjective awareness and conscious disregard of that harm. *See Gaines*, 2009 WL 10677820, at *4-5 (holding evidence that driver did not keep record logs, that drivers were encouraged or permitted to violate safety regulations, and that employer had hired driver despite being aware of omissions from his employment application of a prior termination by a truck driving company, a motor vehicle accident, and a felony conviction, presented a genuine issue of material fact on gross negligence claims based on hiring and supervision); *Braun v. Clean Harbors Env't Servs., Inc.*, No. 1:14-CV-524, 2016 WL 7551118, at *6 (E.D. Tex. Jan. 25, 2016) (rejecting company's summary judgment on gross negligent hiring claim in light of plaintiff's evidence that company rehired driver despite knowing of prior safety violations and citations and allowed him to drive before conducting the safety training and review required to approve drivers for driving an eighteen-wheeler solo).

The motion for summary judgment on Plaintiffs' gross negligence claims against Company is denied.

### B.   Direct Negligence Claims against Company

Company argues that Plaintiffs' direct negligence claims against it fail as a matter of law because vicarious liability has been admitted. (doc. 99 at 16.)

"Texas courts have underscored that, in matters involving only ordinary negligence, a direct liability claim (such as negligent hiring or entrustment) and a claim resulting in vicarious liability under *respondeat superior*[10] are normally mutually exclusive modes of recovery." *Rutherford v. Joe*

---

[10]Under the doctrine of *respondeat superior*, "an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007).

*Rud Trucking, Inc.*, No. SA-13-CA-856-FBH-JB, 2015 WL 12571379, at *5 (W.D. Tex. July 1, 2015), *adopted by* 2015 WL 12552021 (W.D. Tex. July 29, 2015) (citing cases); *see Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App.—Dallas 2002, pet. denied) ("[N]egligent hiring or negligent entrustment and respondeat superior are mutually exclusive modes of recovery."). "[I]f a plaintiff does not demonstrate gross negligence on its direct liability claims and the employer admits vicarious liability, the direct liability claims must be dismissed." *Connell W. Trucking Co. v. Estes Express Lines*, No. EP-20-CV-312-KC, 2022 WL 5568428, at *3 (W.D. Tex. June 28, 2022) (citation omitted). Conversely, "where a plaintiff alleges ordinary negligence against the employee and gross negligence against the employer, the direct claims against the employer (i.e., negligent entrustment) are treated as independent and separate grounds of recovery against the employer for purposes of punitive damages." *Rutherford*, 2015 WL 12571379, at *5 (citing *Rosell*, 89 S.W.3d at 654; *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178-79 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.)).

Here, Plaintiffs have pleaded direct negligence and gross negligence claims against Driver and Company, as well as a claim of vicarious liability against Company. (*See* doc. 46.) Defendants have not challenged the ordinary negligence claims against Driver, and Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact on their direct gross negligence claims against Company. "Under these circumstances, the claims are not mutually exclusive." *Hanson v. Werner Enterprises, Inc.*, No. 2:21-CV-00245-RSP, 2022 WL 17823981, at *5 (E.D. Tex. Dec. 20, 2022) (denying summary judgment of direct negligence claim against trucking company where plaintiff's gross negligence in training and supervision claims survived summary judgment).

Because Plaintiffs have pled a viable gross negligence claim against Company, and their

direct negligence claims against it are not barred under Texas law, it is not entitled to summary judgment.

### V.  CONCLUSION

Driver and Company's motion for partial summary judgment is **DENIED**, and Safety Trainer's motion for summary judgment is **GRANTED**.  By separate partial judgment, the claims against Safety Trainer will be **DISMISSED with prejudice**. Pending for trial are Plaintiffs' claims against Driver and Company for negligence, negligence *per se*, and gross negligence.

**SO ORDERED** on this 7th day of August, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE