IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **HOWARD MALONE and** § | |
| **SUSAN MALONE,** § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:21-CV-2047-BH |
| § | |
| **LEO SPENCE, JASON BULLARD, and** § | |
| **CRST EXPEDITED, INC.,** § | |
| Defendants. § | **Consent Case**[1] |

## MEMORANDUM OPINION AND ORDER

Before the Court are *Defendants' Motion to Strike Certain Opinions of Plaintiffs' Retained Expert, Stefanos Kales*, and *Defendants' Motion to Strike the Opinions of Plaintiffs' Retained Expert, Dr. Shelly Savant*, filed February 18, 2023 (docs. 104, 110); *Defendants' Amended Motion to Strike the Opinions of Plaintiffs' Retained Expert, Scott Greene*, filed February 21, 2023 (doc. 113); and *Defendants' Objections to and Motion to Strike Regarding the Untimely Opinions of David Stopper*, filed July 24, 2023 (doc. 259). Based upon the relevant filings, evidence, and applicable law, the motions to strike are **DENIED in part** and **GRANTED in part**.

### I. BACKGROUND

This lawsuit arises from a motor vehicle accident that occurred around 3:30 a.m. on April 17, 2020, in Chillicothe, Texas. (doc. 46 at 1.)[2] While operating a tractor-trailer owned by CRST Expedited, Inc. (Company), Leo Spence (Driver) drove off the roadway and crashed into two vehicles parked at a convenience store parking lot. Howard Malone and Susan Malone (Plaintiffs),

---

[1] By consent of the parties and order filed October 21, 2021 (doc. 14), this matter has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

who were sleeping in those vehicles at the time of impact, were severely injured as a result.

Plaintiffs assert claims against Company and Driver (Defendants) for negligence, negligence *per se*, and gross negligence, alleging Driver failed to maintain proper control of the truck to avoid the collision and operated a commercial motor vehicle (CMV) while unqualified, fatigued, and in violation of local, state, and federal law, and that Company failed to implement and enforce a fatigue policy, hired and allowed an unfit and/or fatigued driver to operate a tractor-trailer, failed to train and supervise Driver, failed to monitor and/or ensure Driver's driver logs were compliant, and allowed and/or encouraged Driver to operate a CMV in violation of local, state, and federal law. (doc. 46 at 5-9.) They allege that Driver's "lack of qualifications, unsafe and inattentive track record, non-compliant driving logs, fatigue and personal struggles and/or stress directly led to the crash that caused" their severe injuries, and that they are entitled to recover exemplary damages because Defendants' negligent acts and omissions "constitute an entire want to care as to indicate that such acts and omissions were the result of conscious indifference to the rights, safety, and welfare of others." (*Id.* at 9-10.) They also seek to recover actual damages, including past and future physical pain, medical expenses, mental anguish, disfigurement, physical impairment, and loss of consortium. (*Id.* at 10-11.)

Plaintiffs have designated Stefanos Kales, M.D., to address Driver's "working hours and state of fatigue/alertness" in relation to his ability to safely drive a commercial vehicle on the day of the accident, and will provide expert testimony "as to whether driver impairment due to a lack of fitness for duty, fatigued/ill driving by [Driver] caused or contributed to cause this crash." (doc. 106 at 4.)  Scott Greene, a technology and digital forensics professional, has been retained to examine Driver's cell phone data and call detail records, and will provide expert testimony about

2

Driver's cell phone usage before the accident. (doc. 109 at 4-5, 15.) Shelly Savant, M.D., a certified life care planner, has been retained to prepare life care plans for Plaintiffs with future medical expenses for their injuries from the accident. (doc. 124 at 5-9.) David Stopper, an accident reconstruction expert, has been retained to provide expert opinion testimony about the accident and the applicability of the Federal Motor Carrier Safety Regulations (FMCSR) to Defendants. (doc. 261-1.)

Defendants move to strike some opinions of Dr. Kales, Dr. Savant, and Mr. Greene under Federal Rule of Evidence 702, and to strike the second supplemental expert reports of Dr. Kales and Mr. Stopper under Federal Rule of Civil Procedure 26(a)(2).

## II.  FEDERAL RULE OF EVIDENCE 702

Rule 702 governs the admissibility of expert testimony and provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under this rule, the main issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citations omitted). A court has discretion to keep an expert witness from testifying if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). The key factors in

3

evaluating expert testimony are relevance and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and the testimony is relevant and reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert's conclusions themselves."). "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.' " *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)).

**A.     Dr. Savant**

Defendants move to strike Dr. Savant's life care plan for Mr. Malone's lower back surgery

and her life care plan for Mrs. Malone's osteotomy surgery and diminished life expectancy from that procedure. (doc. 111 at 7.) They argue her estimates are unreliable because they are based on unsupported testimony from their treating surgeon, Dr. Milan Mody, and include medical care for medical conditions that predated the accident. (*Id.* at 4-6.)

Reliability requires an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *See Daubert*, 509 U.S. at 592-93. The Supreme Court has suggested that trial courts examine a nonexclusive list of factors, including whether a theory or technique has or can be tested, published, subjected to peer review, whether it has or can be subjected to standards controlling its operation, the known or potential rate of error, and whether it is generally accepted. *Id.* at 593-94. The reliability determination ensures that the expert testimony is "supported by appropriate validation." *Id.* at 590.

"The *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion.' " *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting *Knight*, 482 F.3d at 355). Under Federal Rule of Evidence 703, evidence relied upon by an expert need not be admissible if of a type reasonably relied upon by experts in that particular field. "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999)). "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). It is the burden of the party proffering the expert witness to prove that the facts, data, or opinions relied upon are of the type customarily relied upon by experts in the field, and that such reliance is reasonable.

5

*Moore*, 151 F.3d at 276.

Here, Plaintiffs provide Dr. Savant's affidavit, which explains her qualifications as a certified life care planner and a board-certified neurologist and psychiatrist, the life care planning process, the principles and methods she used in developing the life care plans for Plaintiffs, and explains the bases of her recommendations in those plans. (doc. 124 at 5-9.) It states that she follows the principles and standards of life care planning outlined in *Standards of Practice for Life Care Planners* (Third Edition) and *Life Care Planning and Case Management Handbook,* and the life care plans she developed for Plaintiffs were based on her training and experience in treating medical patients in her practice, peer-reviewed standards and medical literature, her evaluations of Plaintiffs, review of the treating health care provider records, and independent consultation and direct collaboration with their healthcare providers. (*Id.* at 7-8.) It also states that she "concurred with the treating providers' impressions, including their opinions on causation." (*Id.* at 9.)

Plaintiffs have carried their burden in establishing that Dr. Savant's life care plans and anticipated expert testimony are sufficiently reliable to be admitted in evidence at trial. *See Moore*, 151 F.3d at 276. Her opinions are not so fundamentally unsupported that they would not assist the jury in reaching an intelligent and sound verdict. Her methodology involves her evaluations of Plaintiffs, review of their medical records, and interviews with their treating physicians to determine the present and future medical care needed for the injuries they sustained from the accident. *See Smith v. DG Louisiana, LLC*, 499 F. Supp. 3d 280, 286-87 (M.D. La. 2020) (finding it "appropriate for a life care planner to consult with a plaintiff's treating doctors to gather their opinions regarding future medical care" and "to incorporate those opinions in his report").

Defendants argue that some of Dr. Savant's recommendations are solely based on Dr.

6

Mody's opinions and are unreliable because he provided inconsistent testimony regarding whether Mr. Malone's lower back surgery and Mrs. Malone's cervical osteotomy surgery are due to preexisting conditions or the accident. (doc. 111 at 4-5.) Any perceived deficiencies with the methods and bases of Dr. Savant's opinions go to the weight to be given to her testimony, not the admissibility, and may be raised through vigorous cross-examination at trial. *See Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004) (holding that questions relating to the bases and sources of an expert's opinion generally go to the weight of the opinion rather than its admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence"); *see, e.g., Smith*, 499 F. Supp.3d at 287 (denying motion to exclude future medical expense based on an alleged conflict between what treating physicians told life care planner and their deposition testimony because it involved "an issue of fact for the jury to resolve and not a proper basis for exclusion under *Daubert*"); *Sheperd v. Willis*, No. CV 18-1091-JWD-RLB, 2020 WL 5742843, at *4 (M.D. La. Sept. 25, 2020) (denying motion to exclude life care planner's report based on treating physician's opinions that changed after meeting with the life care planner because defendant's challenge goes to the weight of his testimony and should cross examine him at trial about the changed opinion).

Because Plaintiffs have met their burden to establish that Dr. Savant's life care plans and anticipated testimony are reliable, Defendants' motion to strike her opinions is **DENIED**.

B. **Mr. Greene**

Defendants move to strike Mr. Greene's opinions on relevancy and reliability grounds. (doc. 108.)

1. *Relevancy*

7

Defendants argue that Mr. Greene's opinions are irrelevant to Plaintiffs' sole theory that Driver was fatigued while driving on the night of the accident. (doc. 108 at 3.) They contend that there are no allegations in Plaintiffs' amended complaint that Driver was using a cell phone while driving, and that such cell phone use was a cause of the accident. (*Id.* at 4.)

Relevancy is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). The relevancy requirement ensures that the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert*, 509 U.S. at 592. "Expert testimony which does not relate to any issue on the case is not relevant and, ergo, non-helpful." *Id.* at 590.

Here, Mr. Greene examined Driver's cell phone data and cell phone records from between April 14 and April 17, 2020, to determine his cell phone usage while driving Company's tractor-trailer. (doc. 109 at 4-11.) His report identifies the data that should have been found on Driver's phone, and concludes that it is "more likely than not" that the phone was wiped clean of data before being presented for inspection. (*Id.* at 12.) Driver's cell phone usage while riding in the sleeper berth the day before the accident is relevant for establishing his fatigue when he was driving on the day of the accident. Further, evidence of missing cell phone data is relevant for evaluating the credibility of Driver's testimony about his cell phone use around the time of the accident. *See, e.g., Cornejo v. EMJB, Inc.*, No. SA-19-CV-01265-ESC, 2021 WL 4526703, at *5 (W.D. Tex. Oct. 4, 2021) ("[T]he jury can weigh the evidence regarding Skarabrukh's serendipitous loss of his cell phones on the eve of their scheduled inspection when evaluating the credibility of Skarabrukh's testimony about his cell phone use.").

Defendants argue that Mr. Greene does not mention or address fatigue in his report. (doc.

8

108 at 4.) An expert need not offer an opinion on an ultimate issue to be relevant; if his proposed testimony is helpful to assist the fact-finder to understand the evidence or to determine a fact in issue, it is relevant. *Rolls-Royce Corp. v. Heros, Inc.*, No. CIV.A. 307-CV-0739-D, 2010 WL 184313, at *2-3 (N.D. Tex. Jan. 14, 2010). Even though Mr. Greene is not offering an opinion on the ultimate fact issue of what caused the accident, his testimony concerning missing cell phone data will assist the jury to decide whether Driver's cell phone was intentionally wiped of its data and whether to infer that the lost data would have been unfavorable to Defendants. Because Mr. Greene's testimony satisfies the low threshold for relevance, exclusion on the basis of relevancy is inappropriate. *See Mathis*, 302 F.3d at 460-61.

    2.    ***Reliability***

Defendants argue that Mr. Greene's opinions that Driver wiped his cell phone data or presented incorrect cell phones are unsupported speculation. (doc. 108 at 5.)

As discussed, Mr. Greene states in his report that no cell phone data was observed for the relevant time period on Driver's cell phone, which "may be missing because it was intentionally deleted or it may be deleted due to its being overwritten over time." (doc. 109 at 7.) He specifically notes that the phone did not contain any GPS activity at the time of the accident despite Driver testifying that he had used the phone's GPS while driving, and that there were no calls or text messages found for the relevant time frame. (*Id.*) He concludes that the "only way that these specific items would be missing is for them to be selectively deleted," and that "[t]his data was more likely than not purposefully deleted piece by piece, not as a result of any software glitch or failure of the hardware or software." (*Id.*) Mr. Greene also testified that the possible reasons why no relevant data was found on Driver's phone are because he either did not produce the actual phone he was using

9

at the time of the accident or intentionally deleted the phone's data before producing it. (*Id.* at 16.) He explained that based on his experience, it is a common occurrence in semi-truck accidents for drivers to either produce phones that were not in the cab of the truck at the time of the wreck or to purposefully wipe the phones of their data. (*Id.* at 17-18.) He opined that based on the totality of the evidence and circumstances, the most reasonable explanation for why there is no data on Driver's phone from the relevant timeframe is that it was intentionally wiped by Driver. (*Id.* at 18.)

Mr. Greene's opinions are not so fundamentally unsupported that they would not assist the jury in reaching an intelligent and sound verdict. Plaintiffs are not required to show that Mr. Greene's opinions are correct, but only that he is qualified and his testimony is relevant and reliable. *See Moore*, 151 F.3d at 276. It is the purview of the jury to decide the accuracy of facts underlying an opinion. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002). Mr. Greene's opinions that Driver deleted his phone's data is based on his review of the evidence and a common occurrence experienced for his field in semi-truck accidents. Any perceived flaws in the sources or bases of Mr. Greene's testimony are matters to be "tested in the crucible of adversarial proceedings." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996); *see also Primrose Operating*, 382 F.3d at 562-63; *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (noting that an expert's opinion will be excluded on this ground only when, for example, it is "completely unsupported," and "the opposing party must expose that lack of reliability").

Because Plaintiffs have met their burden to establish that Mr. Greene's testimony is relevant and reliable, Defendants' motion to strike his expert testimony is **DENIED**.

**C.     Dr. Kales**

Defendants move to strike Dr. Kales's opinions under Rule 702 on grounds that he is

10

unqualified to offer certain opinions and that some of his opinions are irrelevant and unreliable. (doc. 105.)

### 1. Qualifications

Defendants argue that Dr. Kales is not qualified to opine on motor carrier regulations or Company's commercial trucking policies. (doc. 105 at 6.)

Before allowing expert testimony to be heard, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "The standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter in question." *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009). The inquiry is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues." *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (quoting *Kumho*, 526 U.S. at 156). The court has wide discretion in determining whether an expert is qualified. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

Dr. Kales, a graduate of Harvard Medical School, has been a licensed physician for 32 years and board certified in occupational medicine for 28 years. (doc. 125-2 at 2.) He serves as a professor

11

of medicine and director of the occupational medicine residency at Harvard Medical School, where he is responsible for post-graduate training of physicians in occupational medicine, including the examination of truck drivers, the performance of commercial driver's license (CDL) medical examinations, and the effects of shift work, medications and sleep disorders on truck drivers; supervises physicians in conducting CDL medical examinations of truck drivers; and frequently lectures on the medical certification of commercial truck drivers and accident risk in the trucking industry. (*Id.* at 2-3.) He also has past experience as a director of a continuing medical education course on sleep, fatigue, sleep disorders and medications in the context of federally regulated medical certifications of professional truck drivers. (*Id.* at 3.) Dr. Kales has been a certified medical examiner for the Federal Motor Carrier Safety Administration for 9 years, and a certified medical review officer for the Medical Review Officer Certification Council for 16 years. (*Id.*) He received training in pharmacology and toxicology of prescription drugs as they affect commercial driving, and has contributed to more than 25 publications related to truck drivers and/or sleep. (*Id.*) Dr. Kales has also provided opinions and deposition testimony in at least six other cases involving truck crashes. (docs. 106 at 13-14; 125-1 at 3.)

Based on his expertise in occupational safety, sleep, and fatigue, combined with his experience in the commercial trucking industry, Dr. Kales is qualified to testify on issues of sleep and fatigue in the commercial motor vehicle industry, including the relevant federal motor carrier regulations. Although Dr. Kales acknowledges that he is not a "commercial trucking expert," "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss*, 571 F.3d at 452. Defendants' challenges to Dr. Kales's expertise on the commercial trucking industry go to the weight afforded to his testimony, not its admissibility. *See Cedar Lodge*

*Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018) (recognizing that "[a] witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion") (quotations and citations omitted)); *see, e.g., Brown v. M & N Eaves*, No. 4:21-CV-959-KPJ, 2022 WL 17812441, at *3 (E.D. Tex. Dec. 19, 2022) (finding expert "qualified to offer expert opinions under Rule 702 with respect to the applicable safety regulations, including the FMCSR").

Defendants' motion to exclude Dr. Kales on qualification grounds is **DENIED**.

### 2.  *Reliability*

Defendants argue that "Opinion 8" from Dr. Kales's expert report is an impermissible legal opinion regarding Company's gross negligence. (doc. 105 at 9.)

The Federal Rules of Evidence provide that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. While experts may offer their opinions on ultimate issues, they "may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). This is because "our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Ultimately, the expert must "bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). " '[T]he task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one,' but one that requires courts to exclude questions or answers from experts that 'would supply the jury

13

with no information other than the expert's view of how its verdict should read.' " *Thomas v. W&T Offshore, Inc.*, No. CV 16-14694, 2018 WL 4223589, at *7 (E.D. La. Aug. 27, 2018) (quoting *Owen*, 698 F.3d at 240).

      Dr. Kales's Opinion 8 states:

> [Driver] was non-compliant with completing his logs; and therefore, he was unfit to drive. [Company] was also aware that [Driver] was at high-risk for fatigue. Thus, [Company] was reckless and indifferent to the safety and welfare of others in authorizing [Driver] to drive on the date in question.

(doc. 106 at 16.) This is an impermissible legal opinion, as it essentially parrots the elements of gross negligence under Texas law. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11) (defining "gross negligence" as an act or omission "which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others"). Dr. Kales is not permitted to offer his opinion that Company "was reckless and indifferent to the safety and welfare of others in authorizing [Driver] to drive on the date in question." *See, e.g., Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 WL 3074420, at *10 (W.D. Tex. June 10, 2020) (striking expert testimony that defendants "consciously disregarded the safety and welfare of the motoring public creating a risk of serious injury or death should a collision occur"); *Troy. Flock v. Scripto-Tokai Corp.*, No. CIV.A. H-00-3794, 2001 WL 36390120, at *1 (S.D. Tex. Sept. 28, 2001) (precluding expert from "proffer[ing] testimony stating a legal conclusion, e.g., using language specifically stating that ... any party 'acted with ... reckless disregard' ").

      Defendants' motion to strike Dr. Kales's Opinion 8 is **GRANTED**.

### 3. *Relevancy*

Defendants argue that "Opinion 11" from Dr. Kales's expert report is an irrelevant opinion of an accident that occurred after the accident at issue in this case. (doc. 105 at 12.)

Dr. Kales's Opinion 11 states:

> The circumstances of the preventable accident in the Mr. Freddie Harris case provide further evidence of driver fatigue and preventable accidents resulting from [Company's] team driving system, where co-drivers try to rest in the sleeper berth of a truck that is moving.

(doc. 106 at 25.) The Harris accident occurred six months after the accident in this case, and involved a different driver for Company. (*Id.*) Dr. Kales's opinion regarding this accident is not relevant to the claims in this case. Plaintiffs contend that "the Harris accident is highly relevant on the issue of [Company's] grossly negligent hiring, training, and supervision of its drivers . . ., particularly its routine practice of pushing drivers to keep driving despite their fatigue." (doc. 125 at 22.) Citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977), they argue that "similar accidents are relevant and admissible to prove issues other than notice." (*Id.* at 23.) *Dollar* was a product defect case that involved the *discoverability* of subsequent incidents, not their *admissibility*. See 561 F.2d at 616-17.

Because Dr. Kales's Opinion 11 is not relevant, Defendants' motion to strike the opinion is **GRANTED**.

### III. FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

Defendants argue that the second supplemental reports of Dr. Kales and Mr. Stopper should be stricken because they are untimely under the Federal Rules of Civil Procedure. (docs. 260 at 14; 105 at 9.)

Under Rule 26(a)(2), parties are required to disclose expert witnesses and provide their

15

reports by the deadlines imposed in the scheduling order. Fed. R. Civ. P. 26(a)(2). Expert witnesses who are required to provide a report under Rule 26(a)(2)(B) must supplement "information included in the report and ... information given during the expert's deposition ... by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). If a party fails to timely supplement information as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Here, the parties were required to designate expert opinions by August 22, 2022. Dr. Kales issued a second supplemental report on January 17, 2023, and Mr. Stopper issued a second supplemental report on February 17, 2023. Although these reports were provided after the deadline to designate expert opinions, they should not be stricken if Plaintiffs' violation of Rule 26(a)(2) "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"A district court considers four factors when determining if such a violation is harmless: (1) the explanation, if any, for the non-disclosing party's failure to comply with the discovery rule; (2) the prejudice to the opposing party; (3) the possibility of curing such a prejudice by granting a continuance; and (4) the importance of the evidence and related witnesses' testimony." *Reyes v. City of Farmers Branch, Texas*, No. 3:07-CV-900-O, 2008 WL 4791498, at *3 (N.D. Tex. Nov. 4, 2008) (citing *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). "The Court has broad discretion in deciding whether a violation of Rule 26(a) is substantially justified or harmless." *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).

Plaintiffs explain that they did not get the information that Dr. Kales and Mr. Stopper considered for their supplemental reports until after the deadline. (docs. 125 at 17-21; 302 at 4-5.)

16

For example, Dr. Kales and Mr. Stopper both reviewed, and offered opinions based on, the December 8, 2022 deposition of Driver's co-driver, which was approximately four months after the August 22, 2022 deadline for expert reports. (docs. 125 at 18; 302 at 4.) Plaintiffs also argue there is no evidence of unfair prejudice to Defendants because these reports are not new opinions and only provide additional factual support for Dr. Kales and Mr. Stopper's prior opinions, and because they had several months after receiving the supplemental reports to depose them. (doc. 125 at 18, 21.) Because Plaintiffs have shown that the violation of Rule 26(a)(2) was both substantially justified and harmless, the second supplemental reports of Dr. Kales and Mr. Stopper should not be stricken.

Defendants' motion to strike these reports on this basis is **DENIED**.

### IV.  CONCLUSION

Defendants' motions to strike are **DENIED in part** and **GRANTED in part**. Dr. Kales's Opinion 8 and Opinion 11 are stricken and excluded.

**SO ORDERED** this 9th day of August, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17